UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Delta MB LLC

    v.                                                   Civil No. 24-cv-143-TSM
                                                           Opinion No. 2024 DNH 065

271 South Broadway, LLC, et al.

**O R D E R**

Plaintiff Delta MB LLC filed this breach-of-contract suit against defendants 271 South Broadway LLC ("South Broadway"); Jack B. Corwin Revocable Trust (the "Trust"); Jack B. Corwin, in his personal capacity ("Corwin"); and Huntington Holdings, LLC.  Three of the four defendants – the Trust, Corwin, and Huntington Holdings (the "moving defendants") – move to dismiss the complaint for lack of personal jurisdiction, Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief can be granted, Rule 12(b)(6).  Delta MB objects to dismissal.  For the following reasons, the moving defendants' motion to dismiss (doc. no. 12) is granted.

**BACKGROUND**

The court begins with a summary of the facts as alleged in Delta MB's complaint.  See United States ex rel. Zotos v. Town of Hingham, 98 F.4th 339, 343 (1st Cir. 2024); Lin v. TipRanks, Ltd., 19 F. 4th 28, 33 (1st Cir. 2021).  South Broadway was a Nevada limited liability company whose sole member was the Trust.  Corwin is the Trust's sole trustee.[1]  Huntington Holdings is a California corporation with a principal place of business in California.  Corwin is

---

[1] Beyond its name, the identity of its trustee, and its ownership of South Broadway, Delta MB did not allege any other relevant details about the Trust in the complaint.

Huntington Holdings's chief executive officer, chief financial officer, and secretary. See doc. no. 1-1 ¶ 4.

Delta MB owns real estate at 265 South Broadway, Salem, New Hampshire (the "Property"). The Property is a large retail building within a plaza shopping center. In August 1971, Delta MB's predecessor entered a 20-year lease agreement with a third party. The lease's terms give the tenant an option to extend the lease, under certain terms, for four additional five-year periods. The tenants exercised that option over the years, and the lease agreement's current term expires on February 28, 2026.

In May 2013, a prior third-party tenant assigned its interest to South Broadway. South Broadway sublet the Property to two retail businesses: A.C. Moore and Bed Bath & Beyond. In May 2020 – the height of the COVID-19 pandemic – Delta MB agreed to defer South Broadway's May and June 2020 payments, and South Broadway agreed to repay Delta MB over 12 months beginning on December 1, 2020. Annabelle Corpus-Afable, who was Huntington Holdings's "controller," executed the deferment agreement on South Broadway's behalf. Doc. no. 1-1 ¶ 14.

In July 2020, Corwin told Delta MB that South Broadway invoked the lease agreement's option to extend the lease for another five-year period. The same year, however, A.C. Moore closed its store, leaving South Broadway with one paying sublessee. Beginning in December 2020, South Broadway began paying Delta MB only half of the lease agreement payments, including rent, common area maintenance fees, and real estate taxes. South Broadway also failed to begin repaying the deferred May and June 2020 rent payments. Delta MB asserts that the lease agreement did not permit South Broadway to reduce payments to Delta MB if a sublessee failed to make payments to South Broadway.

In April 2021, Delta MB formally notified South Broadway that it was in default under the lease agreement. Corwin did not respond to overtures from Delta MB to negotiate about the default.

In February 2023, South Broadway assigned to Delta MB its payment rights under the Bed Bath & Beyond sublease. South Broadway also offered to terminate the lease agreement. Delta MB accepted the assignment of the Bed Bath & Beyond sublease payments as partial satisfaction of the unpaid lease payments but did not agree to terminate the lease agreement. Nonetheless, Delta MB sought to further negotiate a termination of the lease agreement with South Broadway, but Corwin – who identified himself as President of Huntington Holdings and sent email communications through a Huntington Holdings email address – responded that he dissolved South Broadway. Corwin refused further correspondence.

Delta MB received some payments from Bed Bath & Beyond. But, in April 2023, Bed Bath & Beyond declared bankruptcy and vacated the Property.[2] The payments from Bed Bath & Beyond did not fully offset what Delta MB alleges it is owed by South Broadway under the lease and deferment agreements, and Delta MB does not expect to receive further payments from bed Bath & Beyond. Delta MB alleges that, as of February 2023, South Broadway owed it $502,186.33 in unpaid rent; $80,937.95 in unpaid common area management payments; and $159,872.15 in unpaid real-estate taxes.

As to Corwin, the Trust, and Huntington Holdings, Delta MB alleges that they used South Broadway as an alter ego to unjustly deprive Delta MB of the lease and deferment agreement

---

[2] Delta MB did not allege in the complaint precisely when Bed Bath & Beyond entered bankruptcy or vacated the Property. Court records indicate that Bed Bath & Beyond filed for bankruptcy in April 2023. In re Bed Bath & Beyond Inc., No. 23-13359-VFP (Bankr. D.N.J. filed April 23, 2023).

payments to which it is entitled. In particular, Delta MB alleges that Corwin intentionally dissolved South Broadway to avoid making the payments and that South Broadway did not have separate management from the Trust or Huntington Holdings as Corwin exercised control over all of them. Delta MB further alleges that South Broadway must have been undercapitalized because Corwin threatened to bring South Broadway into bankruptcy if Delta MB pushed for payment. Finally, Delta MB alleges that the Trust or Huntington Holdings may have retained sublessee rental payments from the Property that should have been directed to Delta MB to repay the debt because those entities may have other assets.

In its complaint, Delta MB brings two claims: breach of contract and unjust enrichment or quantum meruit. Both claims allege essentially the same wrongdoing, which is that South Broadway wrongfully failed to pay Delta MB under the deferment and lease agreements.

*Additional Personal Jurisdiction Facts*

In addition to the facts alleged in the complaint, the court may consider the evidence submitted by Delta MB for purposes of determining whether it has personal jurisdiction over the Trust, Corwin, and Huntington Holdings.[3] Lin, 19 F. 4th at 33. Here, Delta MB filed photographs of a computer screen showing Huntington Holdings's website (doc. no. 21-1 at 4-5) and screenshots of the website (id. at 7-9). On the website, Huntington Holdings displays a map of "our properties," which includes the Property in Salem, New Hampshire. The website states that "Huntington Holdings is excited to announce the acquisition of a Leasehold Interest in the Bed Bath & Beyond and A.C. Moore stores in the Salem Plaza in Salem, New Hampshire." Id. at 4-5.

---

[3] The defendants did not submit any evidence.

Delta MB also filed a statement of information from the California Secretary of State that indicates Corwin is the sole director of Huntington Holdings as well as its chief executive officer, chief financial officer, and secretary. Additionally, Delta MB filed the signed rental deferment agreement, and an email from Corwin in which he "respectfully decline[s]" Delta MB's "invitation for a call" about "questions" regarding the lease. Id. at 16. In the email, Corwin informs Delta MB that South Broadway was a "single purpose LLC" that "was dissolved on" February 14, 2023. Id.

## LEGAL STANDARD

**I.      Personal Jurisdiction**

When a challenge to personal jurisdiction is raised, the plaintiff bears the burden of demonstrating personal jurisdiction. Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In the absence of an evidentiary hearing, the court uses the prima facie standard to evaluate whether the court has personal jurisdiction over a defendant. De Laire v. Voris, No. 21-cv-131-JD, 2021 WL 1227087, at *2 (D.N.H. Apr. 1, 2021). Under the prima facie standard, the court takes the plaintiff's properly supported proffers of evidence as true and construes those proffers in the light most favorable to the plaintiff. Nandjou v. Marriott Int'l Inc., 985 F.3d 135, 147 (1st Cir. 2021); see Lin, 19 F. 4th at 33 (explaining that the court takes the "specific facts affirmatively alleged by the plaintiff as true" regardless of whether they are disputed but, at the same time, does not credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts"). The court also considers any undisputed facts offered by the defendants, but, as noted, the defendants did not file any evidence for the court to consider. Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).

**II.     Failure to State a Claim**

In a Rule 12(b)(6) analysis, the court must separate the complaint's "factual" allegations from its "conclusory" allegations. Zotos, 98 F.4th at 343; Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024). With the conclusory allegations disregarded, the court must evaluate "whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Zotos, 98 F.4th at 343 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). To state a claim, the allegations "must suggest more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). That is, the claim must be "plausible," which means more than "merely conceivable." Lawrence Gen. Hosp. v. Continental Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024).

## DISCUSSION

The Trust, Corwin, and Huntington Holdings move to dismiss. In summary, they argue that this court lacks personal jurisdiction over them because they have no connection to New Hampshire, and they argue that the complaint fails to state any claims for relief against them because it does not allege that they did anything wrong. Delta MB objects, responding that the Trust, Corwin, and Huntington Holdings are liable as South Broadway's alter egos. Delta MB contends that this court has personal jurisdiction over South Broadway, and the court may impute South Broadway's contacts with New Hampshire to the moving defendants under a veil-piercing theory. Because the court finds that it lacks personal jurisdiction over the moving defendants, it addresses that issue only.

The Fourteenth Amendment's Due Process Clause prohibits a court from asserting personal jurisdiction over a defendant unless it has sufficient minimum contacts with the forum state to allow it to reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz,

471 U.S. 462, 474 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). As a threshold matter, there is no dispute that South Broadway has sufficient contacts with New Hampshire for the court to exercise personal jurisdiction over it. Delta MB does not contend that, on their own, the Trust, Corwin, and Huntington Holdings have the requisite contacts. Rather, Delta MB asserts that the court should impute South Broadway's contacts to the moving defendants through a veil-piercing theory.

The First Circuit allows the court, for purposes of finding personal jurisdiction, to impute an entity's contacts to its owners through a veil-piercing theory. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1091-92 (1st Cir. 1992). In United Electric, which arose under the court's federal-question jurisdiction, the First Circuit applied federal common law to determine whether the court may pierce the corporate veil to determine personal jurisdiction. Id. ("We think that in disputes involving workers' claims to ERISA benefits . . . a federal court should apply a federal common law standard of corporate separateness."). Neither the moving defendants nor Delta MB discussed in their briefs whether, in this diversity jurisdiction case, the court should apply the federal-common-law based veil-piercing test for purposes of determining personal jurisdiction, as in United Electric, or the test under New Hampshire (or another state's) law. Compare United Elec., 960 F.2d at 1091-92 (applying federal common law), with Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 371-72 (D. Mass. 2017) (applying forum-state law), and Danton v. Innovative Gaming Corp. of Am., 246 F. Supp. 2d 64, 72-73 (D. Me. 2003) ("In diversity cases, like this one, jurisdiction is to be determined by application of the law of the forum state."). For purposes of this order, the court applies New Hampshire law because this case arises from the court's diversity jurisdiction and because, aside from perfunctory footnotes, Delta MB addressed the relevant arguments under New Hampshire

law and the moving defendants do not contend that another jurisdiction's law should apply. See Danton, 246 F. Supp. 2d at 72-73; In re Foistner, No. 17-10796-BAH, 2023 WL 6051406, at *17 (D.N.H. Sept. 15, 2023) (applying New Hampshire law on corporate veil piercing because the parties operated as if New Hampshire law applied, given that a reasonable relationship existed between the dispute and New Hampshire).

In New Hampshire, as elsewhere, limited-liability entities[4] are presumed separate from their owners insofar as an owner cannot be held liable for an entity's debts, as the owner's liability is limited to its investment. See Peter R. Previte, Inc. v. McAllister Florist, Inc., 113 N.H. 579, 582 (1973) ("[W]hen a corporate enterprise becomes insolvent a creditor may not look to the individual stockholders for payment of his debt in the absence of unusual circumstances."). This feature is "desirable" and "legitimate" but not absolute. See id.; LaMontagne Builders, Inc. v. Bowman Brook Purchase Group, 150 N.H. 270, 275 (2003).

If an owner abuses that limited-liability feature so as "to promote an injustice or fraud," courts may hold that owner liable for the entity's debts through the equitable remedy known as piercing the corporate veil or the alter-ego doctrine.[5] See LaMontagne Builders, Inc., 150 N.H. at 274. Furthermore, "New Hampshire courts do not 'hesitate to disregard the fiction of the corporation' when circumstances would lead to an inequitable result." Terren v. Butler, 134 N.H.

---

[4] The court presumes that the New Hampshire Supreme Court would extend its veil-piercing precedents, which relate to corporate shareholders, to members of limited liability companies like South Broadway. See Mbahaba v. Morgan, 163 N.H. 561, 568 (2012) ("[A]lthough we have yet to address whether the members and managers of an LLC can be held personally liable for its debts under the veil-piercing theory we have applied to corporations, the parties have assumed for analytical purposes that our corporate veil-piercing cases apply to LLCs, and we will do the same.").

[5] In New Hampshire, courts often use "veil piercing" and "alter ego" interchangeably to reference the same "injustice or fraud" test. See LaMontagne Builders, Inc., 150 N.H. at 274; Terren, 134 N.H. at 639.

635, 639-40 (1991) (alterations omitted) (quoting Ashland Lumber Co. v. Hayes, 119 N.H. 440, 441 (1979)).

Here, however, Delta MB's allegations and evidentiary submissions are too threadbare to persuade the court that the circumstances warrant imputing South Broadway's contacts with New Hampshire to the Trust, Corwin, and Huntington Holdings under a veil-piercing theory. As to the Trust and Corwin, Delta MB's evidence and non-conclusory factual allegations are limited. Delta MB asserts that South Broadway lacked capitalization, given Corwin's threat of bankruptcy and subsequent dissolution of the entity. Delta MB also alleges that Corwin exercised sole control over South Broadway through the Trust, which he used to dissolve South Broadway after South Broadway assigned the Bed Bath & Beyond sublease to Delta MB.

Although these facts may signal potential abuse, a person's mere control of a corporate entity plus that entity's apparent insolvency is not enough, on its own, to pierce the corporate veil. See Bartholomew v. Delahaye Group, Inc., No. Civ. 95-20-B, 1995 WL 907897, at *11 (D.N.H. Nov. 8, 1995) ("A lack of practical separation between the shareholder and the corporation, so that the corporation is merely the shareholder's 'alter-ego,' is an important sign that the shareholder has abused the corporate form. . . . It is not, however, conclusive."). Otherwise, every penniless closely-held corporation would be subject to routine veil piercing, and an exception that broad would undermine the presumption of corporate separateness. See Peter R. Previte, Inc., 113 N.H. at 582.

Thus, to pierce the corporate veil, the owner must have committed an act that abused the corporate form and worked an injustice or fraud. E.g., LaMontagne Builders, Inc., 150 N.H. at 274. Delta MB surmises that perhaps Corwin did so by intentionally depleting South Broadway's assets after the default in an effort to avoid paying the debts. Although those circumstances could

justify piercing the corporate veil, see Terren, 134 N.H. at 640 (substantial depletion of corporate assets after learning about potential claim), and Bartholomew, 1995 WL 907897, at *11 (stating that "[c]ommingling personal and corporate assets is not as egregious an abuse of the corporate form as transferring money from corporate to personal assets (or vice-versa) to avoid existing liabilities"), Delta MB fails to support its theory with evidence or non-conclusory factual allegations.  At best, Delta MB's theory is guesswork based on the Trust's potential holding of some of Corwin's personal assets.  But there is no evidence or alleged facts which plausibly suggest that those assets were obtained using sublessee rental payments that South Broadway should have paid to Delta MB.  And without any factual allegations or evidence that reasonably permit the conclusion that Corwin, either in his personal capacity or acting as the Trust's trustee, misused South Broadway's corporate form to work an injustice or fraud on Delta MB, the court cannot pierce South Broadway's corporate veil to find that it has personal jurisdiction over the Trust or Corwin.[6]

Although those same observations also generally apply to Huntington Holdings as well, Delta MB's veil-piercing theory fails against Huntington Holdings for another, more fundamental reason.  "[I]n New Hampshire, corporate veil piercing and the alter-ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own."  Michnovez v. Blair, 795 F. Supp. 2d 177, 186 (D.N.H. 2011).  As the court explained in Michnovez, New Hampshire does not and would not recognize a general "single-enterprise" theory

---

[6] Furthermore, even if the facts were sufficient to pierce the corporate veil to reach the Trust, which was South Broadway's sole member, Delta MB failed to articulate a legal theory about how the court could in turn hold Corwin personally liable for the Trust's liabilities.  Cf. In re Foistner, 2023 WL 6051406, at *18 (dismissing veil-piercing theory against trust because "a trust's status as a non-entity logically precludes a trust from being an alter ego") (quoting Butler v. Candlewood Rd. Partners, LLC (In re Raymond), 529 B.R. 455, 463 (Bankr. D. Mass. 2015)).

in which entities with mere common ownership – i.e., entities, like South Broadway and Huntington Holdings, that may be controlled by the same owner but are not in a parent-subsidiary relationship – are held liable for the other's acts. Id. ("Plaintiffs have identified no authority, and the court's research has identified none, for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory such as California's, under which an entity other than []the owner of a corporation could be held liable for that corporation's conduct by means of veil piercing."); see also Village Press, Inc. v. Stephen Edward Co., Inc., 120 N.H. 469, 471 (1980) ("[T]he fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law."). Delta MB did not submit any evidence or make any allegation that Huntington Holdings owns South Broadway. Instead, Delta MB asserts that Corwin owns Huntington Holdings and Huntington Holdings is vaguely affiliated with South Broadway through that common ownership. The court cannot impute South Broadway's contacts with New Hampshire to Huntington Holdings on that basis. See Michnovez, 795 F. Supp. 2d at 186.

Delta MB advances no other theory upon which the court may exercise personal jurisdiction over the moving defendants. Accordingly, Delta MB's claims against the Trust, Corwin, and Huntington Holdings must be dismissed.[7]

---

[7] In its objection, Delta MB asked the court for an opportunity to amend its complaint if the court finds it to be deficient. Local Rule 7.1(a) prohibits combination objections and affirmative motions for relief, and the request also does not comply with Local Rule 15.1, which governs the form of motions for leave to amend and requires the filing of a proposed amended pleading. Delta MB also asked for an opportunity to engage in jurisdictional discovery. That request likewise runs afoul of Local Rule 7.1(a), and Delta MB did not allege sufficient facts to warrant jurisdictional discovery in any event.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (doc. no. 12) is granted. Defendants Jack B. Corwin Revocable Trust; Jack B. Corwin; and Huntington Holdings, Inc., are dismissed without prejudice for lack of personal jurisdiction.

SO ORDERED.

Talesha L. Saint-Marc
United States Magistrate Judge

August 15, 2024

cc:   Counsel of Record